May it please the Court, I, I.M. Weinstein, appearing on behalf of Ms. Shawna Johnson. In this case, the District Court erroneously granted summary judgment when there were two areas of material dispute about whether the officers violated her clearly established rights. As we argued in our brief, she was seized without any legal justification at the point at which the officer, on her testimony at the deposition, reached into the car, turned off the engine, and said, you're going to jail. That itself was a sufficient violation of her rights to support the cause of action she brought. The officers then prolonged and escalated the Fourth Amendment violation by refusing to permit her to share the commercial driver's license that she undisputedly had at the time of this incident. Is there evidence in the record that she, in fact, has a driver's license or had one at the time? And where is that? There is, Your Honor, and I'm sorry, it's just going to take me. Not just a state ID, but a driver's license. I'm sorry? Not just a state ID, but a driver's license. There is evidence in the record that she had, at that time, a commercial driver's license. It would take me a moment to find that. Okay. Well, that's, that's fine. Perhaps I should say that for rebuttal. That's fine. That's fine. You can get that. Now, I don't doubt that an officer reaching into the car and turning the car off and saying you're going to jail constitutes a seizure. That seems, on those facts, that seems like a seizure. The question is whether it was justified in response to probable cause that a crime was being committed. So, if you could speak to that. Yes, Your Honor. Of course. Thank you. At, according to Ms. Johnson's testimony, at the time that the officer reached in, she had already had an interaction with the officer. She had spoken forthrightly. That did occur. The officer directed her to move her car. She got back into her car, and that terminated that earlier part of the incident. She was then in her car. There is a dispute in the testimony as to how long she was in her car before the officer returned. She testified in her deposition that it was about 30 seconds, and in those 30 seconds, she was trying to pull her car away from the curb. She was trying to comply with the officer. Now, the officer's testimony in the deposition, Lieutenant Turner's testimony, was quite different. That's one of the key material disputes. The officer testified that perhaps 5 or even 10 minutes went by, and that she made no effort to comply with his direction to drive away. And a fact finder could find, on Lieutenant Turner's testimony, that the conduct was justified. A fact finder could also find, on Ms. Johnson's testimony, that she was trying to pull away, that it was a very short interval, that traffic wasn't being blocked, and that the officer came back very quickly and took that action without any justification, certainly not any of the other cases. I would note also, as we note in the brief, that the fact that there was that forthright exchange and that she spoke strongly to the officer previously doesn't factor into . . . Why not? Because . . . well, for two reasons, Your Honor. First, and primarily because, that was protected speech under Seals v. McBee and many other cases with this Court. Well, I mean, is it in the record what the speech was? I mean, there's speech and there's speech. Yes, Your Honor. Of course. Thank you. Ms. Johnson described saying to the officer that he was being disrespectful to her, that there was no way for a man to behave, and that was the language that she used. She used a ton of adjectives, too, in her words. She spoke strongly, Your Honor. Yes. But we're supposed to disregard and divorce that incident from what happened immediately following. Again, first, I rely upon the protected nature of the speech. But the second thing that I'd point out to the Court is that the officer terminated the interaction at that point. The officer . . . one could . . . a fact-finder could infer, and I certainly don't ask this dispute, that a fact-finder could reasonably find that that part of the encounter was over. The officer saw no reason to prolong the encounter at that time. Then she went back to her car and she was trying to pull out, and then the officer returned. What exactly was she doing during those 30 minutes, those 30 seconds, 30 seconds according to her, I guess, view of the case, in attempting to obey the officer's instructions or to move? What was she doing? Her testimony in the deposition was that she turned the steering wheel to pull away from the curb, and that she was looking toward the officer and gesturing to him to help her pull out to stop oncoming traffic. That was her deposition testimony. The officer, on the other hand, testified that she just sat in the car and made no apparent effort to pull away from the curb. The officer testified that that went on for as much as 10 minutes, perhaps 5 minutes, 10 minutes. Even after he instructed her to move? The officer's testimony was that he instructed her to move and that she made no effort to move. Her testimony at the deposition was that she went back to her car and that she immediately turned the wheel and tried to pull out into traffic, but the officer didn't stop the oncoming traffic or stop the traffic to permit her to pull out. And it's his testimony that as long as 10 minutes passed before he then approached her and turned the car off? Yes. So there is a material dispute as to the length of time, which would certainly go to whether or not she was trying to comply with his instructions. Did she put the car in park? I'm sorry, Your Honor? Did she put the car in park? I don't believe the record indicates. I believe her testimony in the deposition was that she got back in the car, trying to think whether she said she turned the engine on, but there's certainly a dispute. She says that she turned the steering wheel to pull out. The officer said he saw no indication that she was trying to pull out. Was it the same officer that she had the initial interaction with who seized her? Same officer? Because I know there were other officers involved as well. That's correct, Your Honor. But Lieutenant Turner was the officer with whom she had the initial interaction and was the officer who she says reached in and turned the engine off. What were the other officers doing at this time? One or two other officers. There are two other officers. I believe the record is as silent as the other officers until the point at which Lieutenant Turner told her to get out of the car. They went to the sidewalk together and he called over another officer and the deposition testimony is that he called over the other officer because he thought it was best that another officer deal with her at this point. That the other officer then came up. They talked on the sidewalk. Ms. Johnson's testimony at the deposition was that at the sidewalk, she said that first she told Lieutenant Turner that she had the license in the Louisiana Wallet app. He said she didn't have a license. The other officer on the sidewalk said that she did say that she had the license on her phone but that she had trouble accessing it. Ms. Johnson's testimony was that she told the officer on the sidewalk that she wanted to show the license on her phone and that before she could do that, Lieutenant Turner told the officer on the sidewalk to put her in handcuffs. What was she arrested for? Forgive me. I don't remember the record. Was it for failure to obey the officer's order to move the car or for not having a license? The record does not reflect that any officer told her why she was being handcuffed at that time. Now, Lieutenant Turner did say that she said she didn't have a license but the lower court found that the arrest was justified only once they received the radio call that she wasn't in the database. That was perhaps thirty minutes later, perhaps as much as forty minutes later. That's what the lower court . . . Yes, that's what the lower court relied on. I do think a fair reading of the record is that Lieutenant Turner took her out of the court because she said she did not have a license. That was his testimony. Okay. And so you're saying it is controverted whether she in fact had a license? No. No, Your Honor. I'm not saying that. The material dispute as to what happened immediately after Lieutenant Turner reached in and turned off the engine is about whether . . . Lieutenant Turner said she said . . . he said show me your license. Lieutenant Turner said . . . she said I don't have a license. She said that . . . she told Lieutenant Turner that she had the license on the phone at that point. So what about the radio call thirty minutes later that you just referred to? What is that about? Thank you, Your Honor. It is, of course, Hornbook criminal procedure law that a search or a seizure is never justified by what it later turns up. Under Terry and all of the cases, the Fourth Amendment intrusion must be justified at its inception. And so the fact that they later . . . a fact finder could easily find on this record that she told them that she had the license, that they wouldn't let her display the license, and that later on when they got the erroneous, but they did get that information, but it turned out to be erroneous information . . . So they got wrong information, you're saying, that she didn't actually have a license? They got wrong information, and the lower court properly relied on this circuit's precedence that an officer may rely on representations of another officer, even if those turn out to be incorrect. We don't deny that proposition of law. We only say that the search had to be justified at its inception, and that the fact that they got that information thirty or forty minutes later does not justify either the initial seizure or prolonging that seizure by keeping her in handcuffs in a police car for no reason until they got that information later on. So the amount of time that went by is certainly quite important here. This Court has emphasized in Fargham v. City of Houston and any number of other cases that even a brief Fourth Amendment intrusion is a Fourth Amendment intrusion, and that certainly if a fact finder found that she was kept handcuffed in the back of that police car for thirty or forty minutes for no reason, and then they later got that information, that would certainly give rise to the cause of action that she pled here. I don't understand. Why then was a radio call . . . why was there this communication at all with the police department about whether she had a license or not then? In other words, there has to be some connection between the fact that she was in a police car and the fact that they get a call saying, well, you know what, she doesn't have a license. Well, again, a fact finder could find that the officers took her into custody in retaliation for her protected speech and then looked for a reason to justify their actions and that the radio transmission justified their actions. I will also note, Your Honor, that the cases suggest, and certainly I think it right, that the officers have a duty to continue investigating if they had a reason to take her into custody to begin with. Then they certainly had an obligation to figure out whether or not she was a licensed driver, if they had a reason to think that she wasn't a licensed driver. There is a dispute, however, as I said. She said, I am a licensed driver. The license is on the Louisiana Wallet app. And our testimony was that they did not permit her to . . . the officer's wife, Lieutenant Turner, that she didn't say she had a license. She said she did not have a license. And then the testimony is to the other officer. She says he wouldn't let her go to her phone. And he says she couldn't access it, that she tried to access it and couldn't, so that, again, is a material dispute between the parties. Now, the district court looked past all of those disputes, did not analyze them at all, and relied only upon the later radio call. And as I've already told you, that cannot justify the intrusion. Okay. I understand your argument, counsel. Thank you. You have time for rebuttal. Thank you, Your Honor. Mr. Mulally. Good afternoon. May it please the Court, Jim Mulally, on behalf of the appellees. Your Honors, this was a single issue case in the district court. The district court determined that probable cause exists for plaintiff's arrest and therefore dismissed all of the claims. The district court, I don't recall, did the district court specify probable cause with respect to which offense? So, it did. As the district court indicated in its opinion, the parties primarily briefed the violation of Louisiana Revised Statute 3256A. That's driver's license. That is not the driver's license. Oh, I'm sorry. The district court chose instead to analyze predominantly the no driver's license. Okay. That was the more convincing argument for the district court. I suggest to this court, and in response to some of the questions posed to opposing counsel, it really isn't the most important issue for the court to decide. The probable cause for arrest existed the moment that plaintiff directly disobeyed the officer's order to move her car and instead exited her car and accosted the officer. Louisiana Revised Statute 3256A provides that no person shall fail or refuse to comply with any lawful order or direction of any police officer invested by law enforcement with authority to direct, control, or regulate traffic. There's no . . . She says that there's a fact issue as to that because she was trying to obey the order and they wouldn't let her do it. So, I don't think that's exactly what she said. She said that there's no doubt that she refused the order initially, confronted the officer, had some very . . . This is the one-minute interaction before she gets back in the car? One with all the adjectives? Yes, Your Honor. Maybe some adverbs. Yes, Your Honor. Well, I don't know that it was quantified. I thought it was a minute. Perhaps. But in that minute, she broke the law and could have gone to jail for it. But to be precise, her First Amendment speech was not the violation of the law. It was her refusal or her failure to move the car. Because the officer says, move your car. And instead, she moves to the officer and gives him a piece of her mind. Certainly, Your Honor. On February 23, 2020, Lieutenant Turner had one job. And that was to control the traffic in and around the port. The plaintiff was obstructing his duties there that day by refusing to move her car. It's simply . . . There was no . . . He wasn't seeking to arrest plaintiff. He wasn't seeking to accost plaintiff. In fact, the record is replete. To her credit, the plaintiff admits fully that the only thing that Lieutenant Turner ever said was move your car. Well, so what about her argument that she was trying to do that when he came over and arrested her? Well, it was too little too late at that point. But when does it become too little too late? Your Honor, again . . . Because if we're talking about 30 seconds versus five minutes, and there's a dispute about that, does that defeat her judgment? Yes, Your Honor. That record wasn't really made in the district court. I don't think that argument was really pressed at the district court level. Is 30 seconds long enough? Is 30 seconds long enough to get someone to comply? Well, I mean, or is 30 seconds long enough for the officer reasonably to believe that she was not complying? Yeah, I would imagine so. Well, let's be more than imagined. Is there a case that supports that? No, Your Honor. I couldn't find anything that specific. There are some cases where . . . a lot of them are airport cases where you talk about brief detentions. You're saying they didn't make the argument. Which argument did they not make? Well, I think they're making more . . . The issue was whether probable cause is consistent for the arrest, which is why the district court focused primarily on the fact that . . . I mean, there's nowhere in the record that she produced a driver's license or that she actually had a driver's license that was valid other than her testimony in a deposition. I still haven't seen that driver's license. So, the issue about a Terry stop or the prolonging of a Terry stop was just not briefed in the lower court. The issue was whether probable cause is consistent for the arrest. The district court found really easily, yes, there was, because there was no driver's license produced. And, as they spot, Lieutenant Turner was able to reasonably rely . . . Do you think the driver's license issued discreetly and standing on its own is sufficient to affirm the district court grant of summary judgment? On the record before the district court, yes, Your Honor. I mean, there's . . . again, there's some novel issues raised on this appeal that weren't raised at the district court. But, the issue before the district court was whether probable cause existed for Plaintiff's arrest. Again, I submitted to the court at the district court level that probable cause existed the moment she refused his lawful order to move. And, that's undisputed. Well, I guess that's what I'm getting at though in my prior questions. When is that moment? I mean, she's outside the car. When she says move the car, she gets out of the car, I guess. Is that right? Yes, Your Honor. So, she goes to the police officer. She exercises her First Amendment rights. We'll credit that argument for the sake of argument. So, then the officer says move your car. She goes back to the car. She points the steering wheel to turn out into traffic. I mean, I guess how long does she get to comply before the officer can then say she's disobeying me and I'm about to go put her in jail? Well, Your Honor, I can't . . . there is no case that I could find that had a . . . that broke . . . I mean, you'll agree there's some period of time can pass where it would be unreasonable for the officer immediately to arrest her. I think when she disobeyed him instead of moving her car and decided instead to engage him and accost him and calls him on, you know, whether it's . . . You're saying when he says move the car initially and she instead gets out of the car and says you've got a mama, you've got a daughter, you know, you should be nicer to a woman, that's when she's . . . That's probable cause to arrest. Yes, Your Honor. In violation of Louisiana Revised Statute 32. And to be clear, that . . . what you're referring to there is before the I get back in the car and I turn the wheel and I can't get out. That is before I get back in the car, I turn the wheel and I can't get out. Which, again, that's a factual dispute. Lieutenant Turner disagrees with that assessment. She says that she was trying to get out. Clearly, he walks back to her and she hasn't complied yet for whatever reason. And at that point, he's had enough. And what was the testimony in the record about, from his view, how much time passed during that period while she claimed she was trying to get out? I think it was substantially more than . . . Ten minutes? Yeah, something to that effect. As opposed to her testimony of 30 seconds? Correct. And honestly, it's probably nowhere near either, right? I mean, 10 minutes seems a little high. 30 seconds seems . . . I know you can appreciate that we are not equipped to adjudicate that. Right. The courts can adjudicate that. Correct. Correct, Your Honor. I'm sure it was somewhere in the middle, between 30 seconds and 10 minutes. But no, at some point, though, it's become enough. And at that point, he's decided that she refuses orders. In his deposition testimony, he said that it was actually creating safety issues. It was backing up traffic. Well, you know, I mean, one thing that we've kind of lost sight of just a little bit here is this is a qualified immunity case. Am I correct? Correct. And so we're not actually strictly talking about whether there was probable cause. It's whether the officer was unreasonable in not finding probable cause, which is a much more forgiving standard than some sort of mathematical . . . Certainly, Your Honor. And I guess that would have been a good answer in answer to Judge Wilson's question about 30 seconds. The better answer, if I had to do over again, would be there's no clearly established loss that would put the officer on notice that he had to give her 30 seconds to obey his order. Well, in lurking in my questions, as well as Judge Duncan just asked, it's not lurking. But, I mean, we are also assessing the situation from the vantage point of the officer, are we not? I'm sorry? Aren't we assessing this from the vantage point of the officer? Because we're basically going to the reasonableness of the officer's belief that, yes, she's disobeying. In other words, a fact dispute as to whether she was actually disobeying the officer's command, I'm not going to say it's not relevant. But, it's a different analysis than did the officer reasonably believe that I have probable cause as the officer to arrest her for disobeying me. I agree with that assessment. In fact, there was a case cited by the plaintiffs in their opposition brief, Vardaman v. City of Houston. I believe that it talks about that, and it is objective standard for a reason, right? So, the officer has a way of gauging when it is that an arrestable offense has occurred. That's why they don't—it can't be the plaintiff's subjective feelings about what was or was not. Even if the plaintiff says, I was doing this, I was doing that, I was trying to comply, I was doing the other, it's what the officer perceived. It's what the officer reasonably perceived. Correct, Your Honor. All right, counsel. Well, thank you. Do you have anything else? No, thank you, Your Honor. Mr. Weinstein, you have rebuttal time. Thank you, Your Honor. You get the last word. I first would offer the record site with respect to her valid license, the Record and Order Appeal 414 to 419. It's a citation we rely upon. What is that? I'll go look at that, but what does that say? Well, what is that? I apologize. That's all right. I was anxious to find that site. Oh, I appreciate the site. We will check that. I take the point with respect to qualified immunity. And I note to the court that the officer did not arrest her for her noncompliance with his first direction to move her car. She drove to the passenger ship terminal. She was picking up passengers. She was a Lyft driver. She saw the officer send her passenger somewhere else. She got out of the car to ask the driver where he'd sent her passengers. And I would suggest that there is no case law that suggests that she is subject to arrest for asking the officer that question, that that's not reasonable, that the officer didn't think that that was the grounds for arrest. I think what you're saying is that the record, when we check it, will reflect that she was not arrested for failure to obey a lawful order. Thank you, Your Honor. I thought he first said you're going to jail when she didn't move her car. And I apologize because I now see that my initial presentation was obscure, and I apologize. That's all right.  Thank you, Your Honor. The incident began when she first drove there, and she saw her passengers. She saw them being sent away, and she pulled up, and Lieutenant Turner told her to move her car. She got out of the car. She said, where did you tell my passengers to go so I can go pick them up? And that's when she, if I may use the expression, gave him a piece of her mind. That was a discrete part of the encounter. She then got back in her car, and that was the period of time that was either 30 seconds or 5 to 10 minutes, during which she either was trying to pull away from the curb or she was not trying to pull away from the curb. As I understand the defendant's argument, they're saying that she was subject to arrest from the very beginning simply because she did not immediately obey the officer and drive away. Well, subject to arrest is a little bit different in my mind from what was she arrested for. Thank you, Your Honor. That would seem to be, I have a feeling that when I go and look at the arrest record, it's going to specify. Maybe it won't, but I would be surprised if it didn't. She was eventually cited for not having a license, not for noncompliance. So Your Honor makes a better argument than I do, and I thank you for that. Well, that's a crime, I mean, not having a driver's license. Yes, Your Honor. I agree, and there's a dispute. Get arrested. Right, and there's a dispute. Although there is evidence in the record that the officers testified in deposition that it would be extremely unusual for a person to get arrested either for that kind of noncompliance or even for the license violation, that it would be much more typical to resolve those situations in some other way so that they wouldn't have to tow the car and cause an obstruction and so on. I appreciate that that doesn't go to the legal point. The last thing I would say about the qualified immunity issue, because I take the point that it is a different standard, is that it's still the case that there are material facts in dispute as to whether a reasonable officer . . . A reasonable officer could believe that if she wasn't complying for ten minutes, that that was grounds for arrest under the cases. A reasonable officer could not think that if she was trying to pull away, she was subject to arrest after thirty minutes. Where's your case law to support that dichotomy? My position is that the cases are clear, I would say. Terry and this Court's case, U.S. v. Valadez, for the proposition that the arrest has to be justified by articulable suspicion and appropriate to the circumstances. And so if she was trying to pull away, she was trying to comply. Similarly, if she inquired about where her passengers went and then got back in her car and tried to pull away, she wasn't subject to arrest initially. There are material facts in dispute, and I urge the Court to reverse. Thank you, Counsel, for your arguments on both sides. The case is submitted. That concludes our arguments for this case.